**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
ANTHONY GUERRIERO,

               Plaintiff,	**MEMORANDUM AND ORDER**
                                                                                                                 24-CV-03653 (OEM)

          -against-

LELAND DUDEK,
ACTING COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

               Defendant.
-------------------------------------------------------------------x
ORELIA E. MERCHANT, United States District Judge:

       Plaintiff Anthony Guerriero ("Plaintiff" or "Guerriero") filed this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of the Social Security Administration's ("SSA") final administrative determination denying Plaintiff's June 29, 2021 application for disability insurance benefits. Complaint, ECF 1 ("Compl.") at 1. Before the Court are the parties' cross-motions for judgments on the pleadings. Notice of Motion for Judgment on the Pleadings by Martin J. O'Malley, ECF 11; Cross Motion for Judgment on the Pleadings by Martin J. O'Malley, ECF 12 ("Def.'s Mot."); Motion for Judgment on the Pleadings Plaintiff's by Martin J O'Malley, ECF 13 ("Pl.'s Mot."); Stipulation of Facts by Martin J. O'Malley, ECF 14; Memorandum of Law in Support of Plaintiff's Brief, ECF 16 ("Pl.'s Mem."); Reply in Opposition re: Cross Motion for Judgment on the Pleadings by Guerriero, ECF 17 ("Pl.'s Reply"). Plaintiff seeks an order (1) reversing the Commissioner's decision below, which found that Plaintiff was not disabled; (2) approving reasonable attorney's fees pursuant to 42 U.S.C. § 406(b); (3) awarding Plaintiff attorney's fees pursuant to the Equal Access to Justice Act, and (4) granting such other and further relief as this Court may deem just and proper. Compl. at 3-4.

1

Having considered the parties' pleadings, briefs, and the administrative record, ECF 9 ("AR")[1], Guerriero's motion is granted, the Commissioner's motion is denied, and this case is remanded for further proceedings.

## BACKGROUND

Guerriero applied for disability insurance benefits on June 29, 2021, alleging a disability starting June 26, 2021, stemming from coronary artery disease, asthma, left foot drop, chronic kidney disease, anemia, depression, and peripheral neuropathy. Compl. at 2. The SSA denied Guerriero's application and Guerriero requested a hearing before the Administrative Law Judge ("ALJ"). *Id.* On September 25, 2022, Guerriero appeared at a hearing, while represented by counsel, before ALJ Valencia Jarvis. *Id.* Guerriero and a vocational expert testified during the telephonic hearing. AR at 3, 36-41.

On January 31, 2024, ALJ Jarvis issued a decision finding that Guerriero "is not disabled under sections 216(i) and 223(d) of the Social Security Act." AR at 96. ALJ Jarvis found that Guerriero retained residual functional capacity ("RFC") for a partial range of light work and denied Guerriero's application for disability insurance benefits. AR at 89, 96. ALJ Jarvis made the following enumerated findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

    2.    The claimant has not engaged in substantial gainful activity since June 26, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*).

    3.    The claimant has the following severe impairments: History of coronary artery disease, status post stent; Asthma; Left foot drop secondary to cardiac arrest; Neuropathy secondary to coronary artery disease (20 CFR 404.1520 (c)).

---

[1] The administrative record, ECF 6, is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the bold Bates stamp at the bottom right corner of each page.

      4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

      5.    The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps or stairs, balance, stoop, and knee[l]. He can occasionally crouch, crawl, and climb ladders, or scaffolds. The claimant can have occasional exposure to extreme cold, heat, and unprotected heights.

      6.    The claimant is capable of performing past relevant work as a Proof-Plate Maker and Lead Printer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

AR at 84-95. The SSA Appeals Council denied Guerriero's request for review on April 18, 2024, making the ALJ's January 31, 2024 decision the final decision of the Commissioner. AR at 73-78; Def.'s Mot. 12 at 1.

## LEGAL STANDARDS

### A.    Standard of Review

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure should be granted if under the pleadings "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995). The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand for further development of the record is appropriate. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks and citation omitted).

3

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

A claimant who is denied disability benefits at the SSA level may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *see Schmidt v. Comm'r of Soc. Sec.*, 20-CV-3594 (KAM), 2022 WL 1540054, at *2 (E.D.N.Y. May 16, 2022). Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted).

### B. Determining Disability at the Administrative Level

Disability insurance benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until they reach a determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is performing substantial gainful activity, then the claimant is not disabled.

At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments that meets the durational requirement, then the claimant is not disabled.

At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled. If not, the ALJ proceeds to step four.

At step four, the ALJ evaluates the claimant's past relevant work and "residual functional capacity," defined as "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §

404.1545(a)(1)); *see* 20 C.F.R §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  If the claimant's RFC permits them to perform past relevant work, they are not disabled.

If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [the claimant's residual functional capacity, age, education, and work experience," the claimant can perform other substantial gainful employment. *Id.*  While the claimant bears the burden of proof during the first four steps, at step five "the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform."  *Nieves v. Comm'r of Soc. Sec.*, 20-CV-8873 (SLC), 2022 WL 951107, at *7 (S.D.N.Y. Mar. 30, 2022) (citing *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)).  Claimants who can perform such work are not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## DISCUSSION

In support of judgment on the administrative record and remand, Guerriero argues that he lacks the capacity for light work and that, even if he could perform light work, his past job was misclassified by the ALJ as "light" when it should have been classified as "medium."  *See generally* Pl.'s Mem.  To the contrary, in support of their motion for judgment on the pleadings, the Commissioner argues that substantial evidence supports the ALJ's light work RFC and past work findings.  *See generally* Def.'s Mot.

### A.    Substantial Evidence Supports the ALJ's RFC Formulation

SSA regulations define a claimant's RFC as "what [the claimant] can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citing SSR 96-8p, 1996 WL

374184). In rendering an RFC determination, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Specifically, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta*, 508 F. App'x at 56. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586–87 (W.D.N.Y. 2018) (quoting *Dailey v. Astrue*, 09-cv-0099, 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010)). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.' [...] This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, 17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining

7

whether the Commissioner's findings were based on substantial evidence, the Court must ascertain whether the agency considered all evidence in the record to reach its findings. 20 C.F.R. § 404.1520(a)(3). The Court "is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Seilan*, 708 F.3d at 417. "However, the Court is mindful that 'it is up to the agency, and not this [C]ourt, to weigh the conflicting evidence in the record.'" *Lebby v. Comm'r of Soc. Sec.*, 20-CV-4760 (PKC), 2022 WL 580983, at *7 (E.D.N.Y. Feb. 24, 2022) (alteration in original) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). The Court does not decide the case *de novo*, instead, the factual findings of the Commissioner are final if supported by substantial evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.").

### 1. Guerriero's Ability to Perform Light Work

Here, the ALJ made the following RFC formulation as to Guerriero: "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps or stairs, balance, stoop, and knee[l]. He can occasionally crouch, crawl, and climb ladders, or scaffolds. The claimant can have occasional exposure to extreme cold, heat, and unprotected heights." AR at 89.

The ALJ properly considered Guerriero's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [§] 404.1529 and SSR 16-3p." *Id.* The ALJ also

8

"considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR [§] 404.1520c." *Id.*

Plaintiff argues that the ALJ's conclusion that Guerriero retains the ability to perform light work is not supported by substantial evidence. Plaintiff's primary evidence for this assertion is Dr. Mary Buggia's examination of Guerriero, following a review of his medical records and a medical examination. Pl.'s Mem. at 4. According to Plaintiff, "[t]he ALJ discounted Dr. Buggia's opinion limiting Guerriero to sedentary work because the opinion was not couched in specific terms about his limitations. The ALJ also claimed that [Dr. Buggia's] opinion was not consistent with the treatment records which generally noted a normal gait and station and full muscle strength." *Id.* (citations omitted). However, Plaintiff asserts that "the ALJ neglects to acknowledge that Dr. Buggia specifically states that she had access to his medical files and reviewed them sufficiently to make her assessment. In her report, she observed a minimal foot drop and also noted a 50% reduction of dorsiflexion on the right foot." *Id.* at 5.

In support of his argument, Plaintiff relies on the "treating physician rule" which requires that "the medical opinion of the doctor who regularly treated the claimant is given extra weight relative to other medical evidence in the record." *Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 861 (2d Cir. 1990); *Greek v. Colvin*, 802 F.3d 370, 375-376 (2d Cir. 2015) (relying on the "treating physician rule."). However, that standard no longer applies. For claims filed on or after March 27, 2017, the following rule applies: the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. Under this rule, medical opinions are evaluated for the persuasiveness, which is based on supportability, consistency, the doctor's relationship to the claimant, specialization, and "other factors." *Id.* §

9

416.920c(a)-(c). Supportability and consistency are the most important factors. *Id.* § 416.920c(b)(2). Here, Dr. Buggia's opinion was contradicted by her own medical assessment noting no change in Guerriero's gait with or without a cane, only minimal foot drop, 5/5 strength in Guerriero's upper *and* lower extremities, intact sensation to light touch, 2+ deep tendon reflexes, and no difficulty getting on and off the exam table. AR at 94 (ALJ Opinion citing Dr. Buggia's opinion). Additionally, other medical opinions contradict Dr. Buggia's opinion. In short, Dr. Buggia's opinion was inconsistent with, and unsupported by, the observations and findings conveyed in her report. For these reasons it was not erroneous for the ALJ to conclude that Dr. Buggia's opinion was not persuasive. Therefore, the ALJ's conclusion is supported by substantial evidence and is affirmed.

### 2. Guerriero's Past Work

Guerriero asserts that the ALJ also erred in the step four finding by concluding that Guerriero's past work was "light[.]" Pl.'s Mot. at 12.

At step four, the Commissioner must determine whether the claimant's RFC permits the claimant to perform their "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the claimant can perform their past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(f).

At step four, the Plaintiff "has the burden to show an inability to return to [his] previous specific job *and* an inability to perform [his] past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original). Therefore, an "ALJ's finding that Plaintiff could perform [his] past relevant work as generally performed is sufficient to negate a finding of

disability at step four; it is not necessary for the Court to determine whether Plaintiff could perform [his] past relevant work as actually performed." *Albano v. Colvin*, 99 F. Supp. 3d 355, 368 (E.D.N.Y. 2015) (cleaned up). ALJs do not err where they determine based upon Plaintiff's and a vocational expert's testimony, that Plaintiff could perform his past work as generally performed but they do not determine if Plaintiff could perform their past relevant work as *actually* performed. *De Cordova v. Comm'r of Soc. Sec.*, 20-CV-3248 (MKB), 2023 WL 5806034, at *8 (E.D.N.Y. Sept. 7, 2023) (collecting cases).

In deciding what the nature of a claimant's duties were, the ALJ relies on the claimant's information about their past work. *See* 20 C.F.R. § 404.1560(b)(2). The DOT or a vocational expert may—but is not required to—be consulted, because these sources can be "helpful in supplementing or evaluating the accuracy of the claimant's description of [claimant's] past work." *Id.*; *see also Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) (summary order) ("While an expert is often called upon to explain the requirements of particular jobs, step four of the analysis does not require that an ALJ consult an expert." (internal quotation marks and citation omitted)).

Guerriero testified that he worked for the New York Post in printing and that he worked with machines, which he "unjam[med][,]" checked the plates for, and cleaned. AR at 8-9. He asserted that he was on his "feet the whole time[,]" *id.* at 9, and that the heaviest amount of weight he had to lift and carry was "anywhere from 25 pounds probably to 50 pounds in each hand." *Id.* Plaintiff insisted that he "was on [his] feet the whole time. . . . The only time [he was] not on [his] feet [wa]s the 30 minutes for lunch." *Id.* at 35. Guerriero insisted that his job did not allow him to sit for four hours a day.

Guerriero contends that his work would be best qualified as medium work Pl.'s Mot. at 13. In classifying his past work as "light work," Guerriero argues that the ALJ and vocational

expert improperly classified his past work as "Proof-Plate Maker[,]" DOT 971.381-034, and "Lead Printer[,]" DOT 979.130-014.  AR at 95.  Guerriero argues that other DOT jobs, like "Supervisor, Electrotyping and Stereotyping," DOT 974.131-010, or "Stereotyper," DOT 974.382-014, more accurately capture his past work.  Pl.'s Mot. at 14-15.  The distinction between a "Proof-Plate Maker" and a "Stereotyper" is crucial because according to the DOT, the former requires light exertion while the latter requires a medium level of exertion.  Because Plaintiff's RFC limits him to light work, he would be unable to perform his past relevant work if his work were classified as that of a "Stereotyper" or "Supervisor, Electrotyping and Stereotyping."

      Guerriero argues that "[t]he vocational expert and the ALJ were misinformed with respect to demands of Guerriero's past work" due to their reliance on Exhibits 3E and 5E, which listed his past work as a "platemaker[,]" AR at 270, and as a "stereotype[r,]" *id* at 287, 294, and noted that Plaintiff lifted no more than 10 pounds.  Pl.'s Mot. at 14.  Guerriero asserts that the job descriptions contained within Exhibits 3E and 5E were made by Guerriero's mother while he was hospitalized, and that "Guerriero clearly disputed the characterization of his work as set forth in Exhibits 3E and 5E and instead explained that he was on his fee [sic] all day and did physical work lifting and carrying plates weighing . . . up to 50 pounds in each hand."  *Id.*  In opposition, the Commissioner argues that the ALJ did not rely on exhibits 3E and 5E to the extent Plaintiff suggests in his memorandum.  Def.'s Mot. at 11.  Rather, the Commissioner asserts that the ALJ relied primarily on Plaintiff's own testimony about his past work, *id.*, and that the vocational expert heard Plaintiff's testimony about his past work prior to testifying, *id.* at 12.  The Commissioner argues that the vocational expert's testimony, because it was based on a hypothetical supported by evidence, "constitutes substantial evidence in support of the ALJ's determination at step four that Plaintiff could perform his past relevant work."  *Id.*

12

According to the DOT, a Proof-Plate Maker (also known as a stripper and printer or photoengraving printer) is someone who:

> Exposes film or glass negatives or positives to artificial light to transfer image onto photosensitive metal plates used for printing, applying knowledge of photographic and layout techniques, using photographic equipment, handtools, and cutting machines: Washes plate to remove foreign matter, using brush, abrasive, and running water. Pours photosensitive solution onto face of plate and distributes solution evenly, using whirling machine. Positions sensitized plate in contact with photographic negative under vacuum frame and directs lights through negative for specified time to print image on sensitized coating of plate. Rolls ink onto face of plate or immerses plate in developing solution and washes with water to remove coating which has not been affected by light. Dusts ink-developed plates with protective powder and heats plates over gas flame to produce surface resistant to etching acid. Surprints line negatives over halftone print to introduce type or other solid matter and combines several subjects stripped to separate flats by successive printing onto plate in register. Cuts metal plates to size, using squaring shear, circle saw, or bandsaw. May mix chemicals. May strip negatives.

DOT 971.381-034. According to the DOT, a supervisor for a printing shop (also known as a Lead Printer),

> Supervises and coordinates activities of workers engaged in photographing and assembling images, making plates, setting type, operating printing presses and related machines and equipment, and assembling and stitching pamphlets, leaflets, and books: Inspects film assembly, platemaking, printing, and binding operations to verify conformance to job order specifications. May repair printing presses, type-setting machines, and assembling and stitching equipment. May supervise workers in printing department of establishment and be designated Supervisor, Printing Department (print. & pub.).

DOT 979.130-014. Significantly, Plaintiff argues that the Lead Printer and Proof-Plate Maker positions are identified as "light work" jobs, which contradict his testimony that he worked a job that demanded that he "lift[] and carry[] plates weighing 25 pounds and up to 50 pounds in each hand." Pl.'s Mem. at 5-9; *see also* Pl.'s Mot. at 13-16; Pl.'s Reply at 2-3. Plaintiff argues that "there are jobs in the DOT that described similar duties but are classified as medium jobs and are more closely aligned with Guerrero's [sic] testimony regarding the demands of his past work."

13

Pl.'s Mot. at 14.  Guerriero then points to the electrotyping and stereotyping supervisor position, defined as follows:

> Supervises and coordinates activities of workers engaged in preparation of duplicate electrotype and stereotype printing plates: Examines items, such as plastic molds, proof prints, stereotype casting molds, and finished printing plates to ensure conformance to company standards or customer specifications. Requisitions parts, supplies, and materials. Performs other duties as described under SUPERVISOR (any industry) Master Title.

DOT 974.131-010.  Guerriero also points to the job of a "stereotype[,]" which is defined as someone who:

> Operates machines to press face of composed type and plates into wood-fiber mat to form stereotype casting mold, pour molten metal into mold, and finish castings by cutting, shaving, and trimming to form plates for printing: Drills matching holes in series of mounted color plates to be duplicated and inserts pilot pins in base to register all plates to key plate for mat molding. Lays sheet of mat paper on form or plates, covers assembly with molding blanket and protective sheet, and pushes assembly to self-feeding rollers of mat-rolling machine or into cavity of hydraulic press. Adjusts time, temperature, and pressure controls to form and dry mold. Cuts and pastes pieces of paper felt or cardboard in large nonprinting areas of mat to prevent collapse during casting of plate. Aligns and notches mats of series with key color mat (mold), using matching machine with monocolor magnifier attachment. Aligns notches with pins of trimming machine and pushes lever to trim three edges of mat simultaneously. Lays mat on casting box platen and arranges steel bars on three sides of mat to confine molten type metal. Pours metal into casting box by hand or operates automatic stereotype plate-casting machine. Trims plates to specified size [PLATE FINISHER (print. & pub.)]. Coats curved plates with nickel [PLATER (electroplating)]. May register series of color plates and mats by transparent acetate overlay process.

DOT 974.382-014.

In determining whether Guerriero could perform his past relevant work, neither the ALJ nor the vocational expert considered whether the DOT occupational titles of "Proof-Plate Maker" or "Lead Printer" were accurate given the discrepancy between Plaintiff's description of his job duties—the number of hours he stood on his feet, and the amount of weight he was required to lift as part of his job—and the description listed in the DOT.  Instead, the ALJ questioned the

14

vocational expert about whether someone with Plaintiff's RFC would be able to perform the work of a "Proof-Plate Maker" or "Lead Printer[,]" as they are generally performed.

To the extent that Guerriero's argument is a legal challenge to the ALJ's decision to use "generally performed" rather than "actually performed" as the RFC reference point, this argument is rejected because it contradicts established law.  *See Albano*, 99 F. Supp. 3d at 368 ("[T]he ALJ's finding that Plaintiff could perform [her] past relevant work . . . as generally performed is sufficient to negate a finding of disability at step four[;] it is not necessary for the Court to determine whether Plaintiff could perform her past relevant work as actually performed.").

However, to the extent that Guerriero's challenge is factual, the Court concurs that the ALJ's factual finding that Guerriero's past work should be classified as a "Proof-Plate Maker" or "Lead Printer[,]" is not supported by Guerriero's testimony.  Guerriero described his past relevant work as requiring that he lift 25 to 50 pounds per hand.  This testimony is inconsistent with "light work" which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  The ALJ did not ask Plaintiff how frequently he carried 25 to 50 pounds per hand.  *See* AR at 9.  The ALJ's failure to inquire about the frequency of Guerriero's weightlifting as part of his job duties is important because the primary distinguishing factor between "medium" and "light" work is the amount of weight the work involves lifting at any given time. 20 C.F.R. § 404.1567(b)-(c).  "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  This is true even where Plaintiff is represented by counsel.  *Id*.  Here, the ALJ explained the weight discrepancy by relying on the vocational expert's classification: "The claimant testified that he typically lifted 25 to 50 pounds per hand, however the vocational expert testified that the claimant's past relevant work

15

was generally performed at the light exertional level. Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed." AR at 95.

The ALJ takes for granted that the vocational expert's classification of Guerriero's past work is accurate even though the vocational expert did not reconcile the fact that Plaintiff testified that he performed prior work at a medium exertional level with the fact that the DOT classifications the expert identified permit only a light exertional level. This finding is not supported by substantial evidence, especially given the fact that Guerriero's work history form listed the title of his job as "stereotyper" on two different pages, AR at 287, 294, a job which requires a medium exertional level, and the fact that the ALJ did not clarify the title of Guerriero's positions as he understood them, *see id.* at 8, 34-36. For these reasons, the record is underdeveloped as to whether Guerriero's past work is accurately understood to fall into the light category and not the medium category.

## CONCLUSION

For these reasons, Guerriero's motion for judgment on the pleadings is granted to the extent of remand, and the Commissioner's cross-motion for judgment on the pleadings is denied. This case is remanded for further proceedings under sentence four of Section 405 (g) of the Social Security Act. The Clerk of Court is directed to enter final judgment and close this case.

SO ORDERED.

May 14, 2025
Brooklyn, New York

/s/ _____

ORELIA E. MERCHANT
United States District Judge

16